05/31/02 FRI 12:53 [TX/RX NO 5082]

JURY FEE PAID
THIS DATE:
BY. **APR 1 9 2002**

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

MARY E. WELCH,

    Plaintiff,

vs.                                    Case No.

McKESSON CORPORATION, a Michigan Corporation
also known as McKESSON DRUG COMPANY,

    Defendant.

_____/

**MOONEY & CONDINO, P.C.**
PAUL F. CONDINO (P39456)
Attorney for Plaintiff
30555 Southfield Road
400 Congress Building
Southfield, MI 48076
(248) 647-4280

_____/

## COMPLAINT and DEMAND FOR JURY TRIAL

*There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.*

NOW COMES the Plaintiff, MARY E. WELCH, by and through her attorneys, MOONEY & CONDINO, P.C., by PAUL F. CONDINO, and says for in support of her complaint against the above captioned Defendant, the follows:

### GENERAL ALLEGATIONS

1. That the Plaintiff herein is a resident of the State of Michigan, Wayne County, at all times relevant herein.

1

05/31/02 FRI 12:53 [TX/RX NO 5082]

2. Defendant is a Michigan corporation with its principle place of business in Wayne County, Michigan with its resident agent being Prentis Hall Corporation System, 601 Abbott Road, East Lansing, Michigan 48823.

3. At all relative times herein, Plaintiff was employed by Defendant in Wayne County, Michigan.

4. All incidents complained of against the above captioned Defendant occurred in the County of Wayne, State of Michigan.

5. This Court has original jurisdiction over the matter.

6. The amount in controversy is in excess of $25,000.00.

## COUNT I

7. Plaintiff hereby incorporates all the above allegations as fully alleged herein.

8. On or about January 13, 1969, Plaintiff started her vemployment with the Defendant as an order filler.

9. Plaintiff is African America.

10. On or about June, 1999, Defendant's supervisors/agents within Defendant's corporation started to intimidate, harass and treat Plaintiff differently than other non-African American employees.

11. Defendant's actions, including but not limited, to the following:

  a. Loss of employment

  b. Loss of earnings and other benefits of employment;

  c. Loss of future earning capacity;

  d. Embarrassment and humiliation; and

  e. Severe mental and emotional distress.

12. Prior to June, 1997, Plaintiff received praise for a job well done.

2

05/31/02 FRI 12:53 [TX/RX NO 5082]

13. Plaintiff started to be harassed and intimidated by her supervisors due to the fact that she was African American and her supervisors were employees of the Defendant.

14. On or about November 1, 1999, Plaintiff ceased working with the Defendant in part due to the stress and harassment endured on the job.

15. Plaintiff served Defendant loyally and well from her date of hire of January 13, 1969 until she was constructively terminated from her position on November 1, 1999.

16. At all times relevant hereto Defendant hereto has been an employer and the Plaintiff has been an employee within the meeting of the Elliott Larsen Civil Rights Act ("the Act"), MSA 3.548(301) *et. seq*

17. The Act prohibits an employer from discriminating against an employee with respect to employment because of religion, race, color, national origin, age, sex, height, weight, or marital status. MSA 3.548(202).

18. Under the statue cited above, Defendant had a duty not to discriminate against Plaintiff with respect to her employment, compensation, or terms, conditions, or privileges of employment because of her age, or to deprive the Plaintiff of employment opportunities or otherwise adversely affect her employment status because of her race and color or to discharge her from employment because of her race and color. Notwithstanding said duties, and intentional breach thereof, Defendant failed to promote the Plaintiff because of her national origin, and constructively terminated her supervisory salaried employment because of her national origin, the Plaintiff being African American.

19. Notwithstanding said duties and intentional breach thereof, Defendant failed to promote the Plaintiff because of her race and color and constructively terminated her employment because of her race and color, the Plaintiff being African American.

3

21. As a direct and proximate result of the Defendant's violations described above, Plaintiff has suffered and will continue to suffer the following injuries:

   a. Loss of employment

   b. Loss of earnings and other benefits of employment;

   c. Loss of future earning capacity;

   d. Embarrassment and humiliation; and

   e. Severe mental and emotional distress

## COUNT II - BREACH OF CONTRACT

1. laintiff incorporates by reference each of the above paragraphs.

   A. On or about January 13, 1969, Plaintiff accepted a job with the Defendant.

   B. The contract of employment between the Plaintiff and Defendant is evidenced in part by a by the Defendant's employee handbook, by Defendant's patterns and practices of employee relations, by Defendant's policies of employment procedures, and by all oral assurances of the Defendant, as well as oral assurances of the Defendant's agents and/or employees.

   A. At various times during her employment with the Defendant, Plaintiff was expressly and/or impliedly informed by her supervisors that she would not be terminated without just cause and that she was assured of continued employment with the Defendant.

   B. It was the policy and practice of the Defendant not to terminate an employee or permanently layoff an employee in the position of Plaintiff without just cause.

   C. In accordance with the aforesaid terms and conditions, the Plaintiff's contract could only be terminated for just cause.

4

D. The Plaintiff relied on the aforesaid expressed and implied assurances that she was assured of continued employment with the Defendant and in reliance thereon the Plaintiff forewent other opportunities of employment with other concerns and remained in the Defendant's employ for 30 years.

E. The aforesaid conditions of employment, as stated herein, provided the Plaintiff with job security so long as she performed her job responsibilities in a satisfactory manner.

F. Evidence of the Defendant contractual services responsibilities to retain the services of the Plaintiff, absolute and just reasonable cause for termination, is found in the Defendant's written personnel policies, and personal assurances given to the Plaintiff by her supervisor's comments and the actual practices of the Defendant relative to its treatment and protection of its employees.

G. From her date of hire until the date she separated from her employment with the Defendant the Plaintiff performed her job responsibilities in a satisfactory manner, and in accordance with the standards set by the Defendant, for the job classification under which the Plaintiff was assigned.

H. During the course of her employment with the Defendant the Plaintiff was subjected to continued harassment, humiliation, intimidation, and hostility directed to her by her immediate supervisor.

I. Notwithstanding the hostile environment at her work place, the Plaintiff continued to perform her job in a satisfactory manner, in accordance with the standards set by the Defendant for the job classification under which she had been assigned.

J. The hostile environment cause by her immediate supervisor employed by Defendant, caused the Plaintiff to suffer from severe depression, and caused the Plaintiff to miss time from work.

K. On or about November 1, 1999 the left her employment with the Defendant due to the stress and harassment she endured on the job.

L. The aforesaid actual and/or constructive termination of employment by the Defendant was without just cause and constitutes breach of the employment contract with the Plaintiff.

5

M. As a direct and proximate result of the aforesaid breach of contract by the Defendant the Plaintiff has suffered damages including but not limited to:

    N. Loss of employment.

    O. Loss of past and future compensation.

    P. Loss of past and future benefits, including but not limited to medical insurance, disability insurance, pension, and vacation benefits.

    Q. Loss of livelihood and dignity.

R. The Plaintiff has at all times attempted to mitigate her damages as sustained by the wrongful and unjust termination by the Defendant.

## COUNT III - INTENTIONAL AFFLICTION OF EMOTIONAL DISTRESS

S. Plaintiff incorporates by reference each of the above paragraphs.

T. The Plaintiff became employed by the Defendant on or about January 13, 1969 and served loyally and faithfully through November 1, 1999.

U. During her employment, the Plaintiff was subjected to severe harassment, intimidation, humiliation, and hostility from the Defendant's supervisors/agents during the course of her employment with the Defendant.

V. The Defendant was aware of the Defendant's supervisors/agents' conduct, as the Plaintiff had complained of her conduct to administration on more than one occasion.

W. The Defendant's agents/supervisors' conduct was intentional.

X. The Defendant's agents/supervisors' conduct was extreme, outrageous, and of such character as not to be tolerated by civilized society.

6

Y. The Defendant's supervisors/agents' conduct resulted in severe and serious emotional distress to the Plaintiff, necessitating treatment for severe depression and psychiatric conditions.

Z. As a direct and proximate result of the Defendant's supervisors/agents' conduct, Plaintiff has suffered from and continues to suffer from damages including but not limited to:

    A. Loss of employment.

    B. Loss of past and future compensation.

    C. Loss of past and future benefits, including but not limited to medical insurance, disability insurance, pension, and vacation benefits.

    D. Loss of livelihood and dignity.

    E. Severe emotional distress.

    F. Humiliation and embarrassment.

    G. Sleeplessness and anxiety.

## COUNT IV – RESPONDEAT SUPERIOR

AA. Plaintiff incorporates by reference each of the above paragraphs.

BB. Defendant is liable for the torts of its agents and/or employees.

CC. Defendant is liable and responsible for the tortious conduct and acts of its employees/agents conducted in the course of employment.

DD. Defendant, by and through its employees/agents and supervising personnel, has engaged in tortuous conduct toward the Plaintiff herein, which conduct includes intentional affliction of emotional distress, and interference with the Plaintiff's contract of employment with the Defendant.

EE. The tortious conduct of the Defendants herein has caused the Plaintiff humiliation, outrage, indignity, mental anguish, mental concern, and severe depression, and Plaintiff herein is seeking damage for said injuries.

7

FF. In the course of her employment with the Defendant the Plaintiff was subjected to significant and malicious verbal harassment and intimidation at the hands of Defendant's agents/supervisors.

GG. The aforesaid actions by the agent/employee of the Defendant were intentional and malicious, and Defendant's agents knew or should have known that such action would cause extreme mental anguish and emotional distress to the Plaintiff.

HH. As a direct and proximate result of said actions, the Plaintiff has suffered great injury, including but not limited to:

    A. Loss of employment.

    B. Loss of past and future compensation.

    C. Loss of past and future benefits, including but not limited to medical insurance, disability insurance, pension, and vacation benefits.

    D. Loss of livelihood and dignity.

    II. Severe emotional distress.

    JJ. Humiliation and embarrassment.

    KK. Sleeplessness and anxiety.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court enter a Judgment in her favor and against the Defendants in an amount to determined to be fair and equitable, including exemplary damages of whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained by the Plaintiff, and further respectfully request that this Honorable Court award to the Plaintiff interest, costs and attorney's fees incurred in bringing this action.

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiffs by and through their attorneys, MOONEY & CONDINO, P.C., by PAUL

05/31/02 FRI 12:53 [TX/RX NO 5082]

F. CONDINO, and hereby demand trial by jury in the above-referenced matter.

MOONEY & CONDINO, P.C.

*Paul Condino*

By: PAUL F. CONDINO (P39456)
Attorney for Plaintiff

Dated: April 19, 2002

9

05/31/02 FRI 12:53 [TX/RX NO 5082]

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

MARY E. WELCH,

    Plaintiff,

vs.

McKESSON CORPORATION, a Michigan Corporation
also known as McKESSON DRUG COMPANY,

    Defendant.
_____/

02-213244 CZ 4/19/2002
JDG:WILLIAM J GIOVAN
WELCH MARY E
vs
MCKESSON CORPORATION

MOONEY & CONDINO, P.C.
PAUL F. CONDINO (P39456)
Attorney for Plaintiff
30555 Southfield Road
400 Congress Building
Southfield, MI 48076
(248) 647-4280
_____/

### FIRST AMENDED COMPLAINT and DEMAND FOR JURY TRIAL

*There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.*

NOW COMES the Plaintiff, MARY E. WELCH, by and through her attorneys, MOONEY & CONDINO, P.C., by PAUL F. CONDINO, and says for in support of her complaint against the above captioned Defendant, the follows:

### GENERAL ALLEGATIONS

1. That the Plaintiff herein is a resident of the State of Michigan, Wayne County, at all times relevant herein.

1

05/31/02 FRI 12:53 [TX/RX NO 5082]

2. Defendant is a Michigan corporation with its principle place of business in Wayne County, Michigan with its resident agent being Prentis Hall Corporation System, 601 Abbott Road, East Lansing, Michigan 48823.

3. At all relative times herein, Plaintiff was employed by Defendant in Wayne County, Michigan.

4. All incidents complained of against the above captioned Defendant occurred in the County of Wayne, State of Michigan.

5. This Court has original jurisdiction over the matter.

6. The amount in controversy is in excess of $25,000.00.

## COUNT I

7. Plaintiff hereby incorporates all the above allegations as fully alleged herein.

8. On or about January 13, 1969, Plaintiff started her vemployment with the Defendant as an order filler.

9. Plaintiff is African America.

10. On or about June, 1999, Defendant's supervisors/agents within Defendant's corporation started to intimidate, harass and treat Plaintiff differently than other non-African American employees.

11. Defendant's actions, including but not limited, to the following:

    a. Loss of employment

    b. Loss of earnings and other benefits of employment;

    c. Loss of future earning capacity;

    d. Embarrassment and humiliation; and

    e. Severe mental and emotional distress.

12. Prior to June, 1997, Plaintiff received praise for a job well done.

2

13. Plaintiff started to be harassed and intimidated by her supervisors due to the fact that she was African American and her supervisors were employees of the Defendant.

14. On or about November 1, 1999, Plaintiff ceased working with the Defendant in part due to the stress and harassment endured on the job.

15. Plaintiff served Defendant loyally and well from her date of hire of January 13, 1969 until she was constructively terminated from her position on November 1, 1999.

16. At all times relevant hereto Defendant hereto has been an employer and the Plaintiff has been an employee within the meeting of the Elliott Larsen Civil Rights Act ("the Act"), MSA 3.548(301) *et. seq*

17. The Act prohibits an employer from discriminating against an employee with respect to employment because of religion, race, color, national origin, age, sex, height, weight, or marital status. MSA 3.548(202).

18. Under the statue cited above, Defendant had a duty not to discriminate against Plaintiff with respect to her employment, compensation, or terms, conditions, or privileges of employment because of her age, or to deprive the Plaintiff of employment opportunities or otherwise adversely affect her employment status because of her race and color or to discharge her from employment because of her race and color. Notwithstanding said duties, and intentional breach thereof, Defendant failed to promote the Plaintiff because of her national origin, and constructively terminated her supervisory salaried employment because of her national origin, the Plaintiff being African American.

19. Notwithstanding said duties and intentional breach thereof, Defendant failed to promote the Plaintiff because of her race and color and constructively terminated her employment because of her race and color, the Plaintiff being African American.

3

05/31/02 FRI 12:53 [TX/RX NO 5082]

21. As a direct and proximate result of the Defendant's violations described above, Plaintiff has suffered and will continue to suffer the following injuries:

   a. Loss of employment

   b. Loss of earnings and other benefits of employment;

   c. Loss of future earning capacity;

   d. Embarrassment and humiliation; and

   e. Severe mental and emotional distress

## COUNT II - BREACH OF CONTRACT

22. Plaintiff incorporates by reference each of the above paragraphs.

23. On or about January 13, 1969, Plaintiff accepted a job with the Defendant.

24. The contract of employment between the Plaintiff and Defendant is evidenced in part by a by the Defendant's employee handbook, by Defendant's patterns and practices of employee relations, by Defendant's policies of employment procedures, and by all oral assurances of the Defendant, as well as oral assurances of the Defendant's agents and/or employees.

25. At various times during her employment with the Defendant, Plaintiff was expressly and/or impliedly informed by her supervisors that she would not be terminated without just cause and that she was assured of continued employment with the Defendant.

26. It was the policy and practice of the Defendant not to terminate an employee or permanently layoff an employee in the position of Plaintiff without just cause.

27. In accordance with the aforesaid terms and conditions, the Plaintiff's contract could only be terminated for just cause.

28. The Plaintiff relied on the aforesaid expressed and implied assurances that she was assured of continued employment with the Defendant and in reliance thereon the Plaintiff forewent other opportunities of employment with other concerns and remained in the Defendant's employ for 30 years.

29. The aforesaid conditions of employment, as stated herein, provided the Plaintiff with job security so long as she performed her job responsibilities in a satisfactory manner.

30. Evidence of the Defendant contractual services responsibilities to retain the services of the Plaintiff, absolute and just reasonable cause for termination, is found in the Defendant's written personnel policies, and personal assurances given to the Plaintiff by her supervisor's comments and the actual practices of the Defendant relative to its treatment and protection of its employees.

31. From her date of hire until the date she separated from her employment with the Defendant the Plaintiff performed her job responsibilities in a satisfactory manner, and in accordance with the standards set by the Defendant, for the job classification under which the Plaintiff was assigned.

32. During the course of her employment with the Defendant the Plaintiff was subjected to continued harassment, humiliation, intimidation, and hostility directed to her by her immediate supervisor.

33. Notwithstanding the hostile environment at her work place, the Plaintiff continued to perform her job in a satisfactory manner, in accordance with the standards set by the Defendant for the job classification under which she had been assigned.

34. The hostile environment cause by her immediate supervisor employed by Defendant, caused the Plaintiff to suffer from severe depression, and caused the Plaintiff to miss time from work.

35. On or about November 1, 1999 the left her employment with the Defendant due to the stress and harassment she endured on the job.

36. The aforesaid actual and/or constructive termination of employment by the Defendant was without just cause and constitutes breach of the employment contract with the Plaintiff.

5

37. As a direct and proximate result of the aforesaid breach of contract by the Defendant the Plaintiff has suffered damages including but not limited to:

    A. Loss of employment.

    B. Loss of past and future compensation.

    C. Loss of past and future benefits, including but not limited to medical insurance, disability insurance, pension, and vacation benefits.

    D. Loss of livelihood and dignity.

38. The Plaintiff has at all times attempted to mitigate her damages as sustained by the wrongful and unjust termination by the Defendant.

## COUNT III - INTENTIONAL AFFLICTION OF EMOTIONAL DISTRESS

39. Plaintiff incorporates by reference each of the above paragraphs.

40. The Plaintiff became employed by the Defendant on or about January 13, 1969 and served loyally and faithfully through November 1, 1999.

41. During her employment, the Plaintiff was subjected to severe harassment, intimidation, humiliation, and hostility from the Defendant's supervisors/agents during the course of her employment with the Defendant.

42. The Defendant was aware of the Defendant's supervisors/agents' conduct, as the Plaintiff had complained of her conduct to administration on more than one occasion.

43. The Defendant's agents/supervisors' conduct was intentional.

44. The Defendant's agents/supervisors' conduct was extreme, outrageous, and of such character as not to be tolerated by civilized society.

6

05/31/02 FRI 12:53 [TX/RX NO 5082]

45. The Defendant's supervisors/agents' conduct resulted in severe and serious emotional distress to the Plaintiff, necessitating treatment for severe depression and psychiatric conditions.

46. As a direct and proximate result of the Defendant's supervisors/agents' conduct, Plaintiff has suffered from and continues to suffer from damages including but not limited to:

    A. Loss of employment.

    B. Loss of past and future compensation.

    C. Loss of past and future benefits, including but not limited to medical insurance, disability insurance, pension, and vacation benefits.

    D. Loss of livelihood and dignity.

    E. Severe emotional distress.

    F. Humiliation and embarrassment.

    G. Sleeplessness and anxiety.

## COUNT IV – RESPONDEAT SUPERIOR

47. Plaintiff incorporates by reference each of the above paragraphs.

48. Defendant is liable for the torts of its agents and/or employees.

49. Defendant is liable and responsible for the tortious conduct and acts of its employees/agents conducted in the course of employment.

50. Defendant, by and through its employees/agents and supervising personnel, has engaged in tortuous conduct toward the Plaintiff herein, which conduct includes intentional affliction of emotional distress, and interference with the Plaintiff's contract of employment with the Defendant.

51. The tortious conduct of the Defendants herein has caused the Plaintiff humiliation, outrage, indignity, mental anguish, mental concern, and severe depression, and Plaintiff herein is seeking damage for said injuries.

7

05/31/02 FRI 12:53 [TX/RX NO 5082]

52. In the course of her employment with the Defendant the Plaintiff was subjected to significant and malicious verbal harassment and intimidation at the hands of Defendant's agents/supervisors.

53. The aforesaid actions by the agent/employee of the Defendant were intentional and malicious, and Defendant's agents knew or should have known that such action would cause extreme mental anguish and emotional distress to the Plaintiff.

54. As a direct and proximate result of said actions, the Plaintiff has suffered great injury, including but not limited to:

    A. Loss of employment.

    B. Loss of past and future compensation.

    C. Loss of past and future benefits, including but not limited to medical insurance, disability insurance, pension, and vacation benefits.

    D. Loss of livelihood and dignity.

    E. Severe emotional distress.

    F. Humiliation and embarrassment.

    G. Sleeplessness and anxiety.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court enter a Judgment in her favor and against the Defendants in an amount to determined to be fair and equitable, including exemplary damages of whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained by the Plaintiff, and further respectfully request that this Honorable Court award to the Plaintiff interest, costs and attorney's fees incurred in bringing this action.

8

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiffs by and through their attorneys, MOONEY & CONDINO, P.C., by PAUL F. CONDINO, and hereby demand trial by jury in the above-referenced matter.

                                                   MOONEY & CONDINO, P.C.

                                                   By: PAUL F. CONDINO (P39456)
                                                   Attorney for Plaintiff

Dated: April 26, 2002